# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| **CHRISTINA BACKUES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **V.** | )      **Case No. 4:13CV410 NCC** |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.[1]** | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Christina Backues (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 13). Defendant has filed a brief in support of the Answer. (Doc. 18). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 20).

## I.
## PROCEDURAL HISTORY

On November 13, 2007, Plaintiff filed her application for DIB, alleging a disability onset date of July 26, 2006. (Tr. 115). Plaintiff's application was denied and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 115). After a hearing, by decision dated June 25, 2009, the ALJ found Plaintiff not disabled. (Tr. 115-21). Plaintiff filed a request for review with the Appeals Council, which remanded the matter to the ALJ for further consideration. (Tr.

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

122).  After a second hearing, by decision dated February 25, 2011, the ALJ found Plaintiff not disabled.  (Tr. 9-19).  The Appeals Council denied Plaintiff's request for review.  (Tr. 1-3).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'"  Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  Id.  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work."  Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1.  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).

"Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have

decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger,  390 F.3d at 589;

Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661

(8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To  determine  whether  the  Commissioner's  final  decision  is  supported  by  substantial

evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The  subjective  complaints  of  pain  and  description  of  the  claimant's
physical activity and impairment;

(5)  The  corroboration  by  third  parties  of  the  claimant's  physical
impairment;

(6) The  testimony  of  vocational  experts  based  upon  proper  hypothetical
questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

<u>Brand v. Sec'y of Dep't of Health, Educ. & Welfare</u>, 623 F.2d 523, 527 (8th Cir. 1980); <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." <u>Ford v. Astrue</u>, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

<u>Baker v. Sec'y of Health & Human Servs.</u>, 955 F.2d. 552, 555 (8th Cir. 1992); <u>Polaski</u>, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. <u>See</u> <u>id.</u> The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the

plaintiff's appearance and demeanor at the hearing.  See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints.  See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995).  It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988).  The ALJ, however, "need not explicitly discuss each Polaski factor."  Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).  See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)).  The ALJ need only acknowledge and consider those factors.  See id.  Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.  See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e).  The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work.  See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.  The Commissioner has to prove this by substantial evidence.

Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff was born in 1962 and alleged a disability onset date of July 26, 2006. (Tr. 9, 345). At the first hearing, Plaintiff testified that, most of the time, she had pain in her neck that was 7 on a 10-point scale; about twice a month, her neck pain was a level 9 for several minutes; she had arthritis with pain in her back and legs; she had unpredictable vertigo several times a

month and this lasted for several hours; two or three times a month, she had headaches; she could

walk and stand for 10 minutes each; and she needed to lay down 5-6 times and sleep for 2-3

hours a day.  At the second hearing, Plaintiff testified that her vertigo had become worse since

the prior hearing; she was having vertigo every two or three weeks and it lasted for one day; she

also had waves of dizziness that required her to lay down; 4-5 times a week she had crying spells

which lasted one hour; and she spent 80 percent of her time in bed.[2]  (Tr. 12-13).

The ALJ found that Plaintiff was last insured on December 31, 2010; she had not

engaged in substantial gainful employment from her alleged onset date, July 26, 2006, through

the date she was last insured; she had the severe impairments of degenerative joint disease of the

lumbar spine and degenerative disc disease of the cervical spine; and, through the date last

insured, Plaintiff did not have an impairment or combination of impairments that met or

medically equaled a listed impairment.  The ALJ further found that Plaintiff had the RFC to

perform light work except that she could only occasionally climb stairs and ramps, kneel, and

crouch; she could never reach overhead and could not reach out greater than 90 degrees for more

than 2 hours a day; she must avoid concentrated exposure to extreme cold, wetness, and

humidity; and she must avoid concentrated exposure to hazards of heights.  The ALJ finally

found that Plaintiff had no past relevant work; based on the testimony of a VE, there were jobs in

the national economy, in significant numbers, which Plaintiff could perform; and, therefore,

Plaintiff was not disabled at any time from her alleged onset date through December 31, 2010,

the date she was last insured.

Plaintiff argues the ALJ's decision is not based on substantial evidence because the ALJ

failed to comply with the directives of the Appeals Council regarding the testimony of a VE;

---

[2] Plaintiff does not dispute the ALJ's description of Plaintiff's testimony as stated above.  (Doc. 13 at 3).

based on the VE's testimony, the ALJ should have awarded Plaintiff benefits; and the ALJ erred in giving "little, if any," weight to the opinion of Plaintiff's mental health counselor and her nurse practitioner regarding the extent to which Plaintiff's impairments affect her ability to work. (Doc. 13 at 6). For the following reasons, the court finds Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence.

**A.      Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including the severity of Plaintiff's alleged impairments. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to

make.  See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).  See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).  In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination."  Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).  See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).  For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered the objective medical evidence and concluded it did not support Plaintiff's allegations regarding the severity of her impairments. [3]  See Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (absence of objective medical evidence to support the complaints is factor to be considered, although ALJ may not discount claimant's subjective complaints solely because they are unsupported by objective medical evidence); Ramirez v. Barnhart, 292 F.3d 576 (8th Cir. 2002) (while ALJ may not disregard subjective pain allegations solely because they are not fully supported by objective medical evidence, ALJ is entitled to make factual determination that claimant's subjective pain complaints are not credible in light of objective medical evidence) (citing 20 C.F.R. § § 416.908, 416.929).  As for the objective medical evidence, Stanley Martin, M.D., reported, on July 26, 2006, that Plaintiff was in no obvious

---

[3] Plaintiff does not take issue with the ALJ's opinion to the extent it summarizes Plaintiff's medical records; rather, a stated above, she takes issue with the weight given to the opinions of a mental health counselor and a nurse practitioner.  As such, the court will adopt the ALJ's summarization of the medical records.

distress she had intact sensation in all four extremities; and there was "no good evidence for radiculopathy or myelopathy by history or on examination." A September 11, 2007 MRI showed mild broad-based bulging without focal disc abnormality and facet arthropathy at L4-5, and no significant neural foraminal narrowing or central stenosis. Examination by Loretta Mendoza, M.D., in December 2007, showed no defects in Plaintiff's upper extremities, and that she had normal gait and no muscle atrophy. X-rays of this date showed degenerative joint disease of the lumbosacral spine and degenerative disc disease of the cervical spine. When Plaintiff presented to the emergency room with back pain, on August 19, 2008, an x-ray showed an "essentially unremarkable lumbosacral spine." Min Pan, M.D., who conducted a neurological evaluation of Plaintiff, on August 28, 2008, reported that she had normal muscle tone and full strength in all extremities; and her sensory examination was normal. When Plaintiff had videonystagmography (VNG) testing for vertigo, on January 25, 2010, the VNG showed "no gaze, spontaneous or positional nystagmus." Also, testing for positional vertigo was "negative for both sides." A February 20, 2010, MRI showed multi-level degenerative disc disease and degenerative joint disease of the cervical spine with moderate central canal stenosis. (Tr. 13-15).

Second, the ALJ considered medical records which reflected that Plaintiff was not always compliant with recommended treatment. See Eichelberger, 390 F.3d at 589 (ALJ properly considered that plaintiff cancelled several physical therapy appointments and that no physician imposed any work-related restrictions on her) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain). Stanley Martin, M.D., reported, on July 26, 2006, that Plaintiff had not completed a recommended course of physical therapy for neck pain. Dr. Pan reported, in August 2008, that Plaintiff was reluctant to undergo

recommended physical therapy. On September 1, 2010, Plaintiff reported that she had not taken her prescribed antidepressant medication for the prior three weeks, and on September 22, 2010, she was still not taking her medication.

Third, Plaintiff took over-the-counter medication. (Tr. 387). Where a plaintiff has not been prescribed any potent pain medication, an ALJ may properly discount the plaintiff's complaints of disabling pain. Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994); Benskin, 830 F.2d at 884 (treatment by hot showers and taking dosages of Advil and aspirin do not indicate disabling pain); Cruse v. Bowen, 867 F.2d 1183, 1187 (8th Cir. 1989) (minimal consumption of pain medication reveals lack of disabling pain); Rautio, 862 F. 2d at 179 (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling pain). As stated above, prior to July 26, 2006, Plaintiff was referred to physical therapy. Also, she told Loretta Mendoza, M.D., in December 2007, that she took Tylenol for her neck pain.

Fourth, the ALJ considered that, on September 1, 2010, Plaintiff reported that she was stressed because her hearing had been postponed, her son had moved out, and her cat had died. On November 20, 2010, her counselor reported that they processed Plaintiff's conflicted feelings regarding a man having "just moved into her home" and over her court date. Indeed, situational depression is not disabling. See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations).

Fifth, the ALJ considered that although Plaintiff reported, in October 2009, that she had a spell of vertigo which lasted nine days, the record did not reflect she sought treatment for this

spell, and that she was not hospitalized for her mental impairment. See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (a lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility); Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (lack of objective medical evidence contradicts a claimants allegations of disabling pain). (Tr. 16).

Sixth, the ALJ considered that, inconsistent with her claim regarding the severity of her vertigo, Plaintiff continued to drive. He also considered Plaintiff reported that she shopped at the grocery store and Wal-Mart, played games on the computer, prepared meals regularly, watched television, read, spent time which her children and grandmother, and helped her children with homework. (Tr. 17, 388). See Clevenger v. Soc. Sec. Admin., 567 F.3d 971, 976 (8th Cir. 2009) (cases send mixed signals about significance of daily activities, but noting claimant reported she engaged in an array of activities; it was not unreasonable under case law for ALJ to rely on this evidence to infer claimant's assertion of disabling pain was not entirely credible); Pirtle v. Astrue, 479 F.3d 931, 935 (8th Cir. 2007) (claimant's ability to homeschool her two children was inconsistent with allegation of disability); Goff, 421 F.3d at 792 ("Inconsistencies between [a claimant's] subjective complaints and [her] activities diminish [her] credibility."). (Tr. 16).

Seventh, the ALJ considered that Plaintiff did not have a good earnings record. (Tr. 17). An ALJ may discount a claimant's credibility based upon her poor work record. See Ramirez, 292 F.3d 576, 581 (8th Cir. 2002) (in making a credibility determination, ALJ properly weighed heavily claimant's poor work record and fact that her prospective SSI benefits would exceed amount she was able to earn while working; this evidence suggests that claimant was not motivated to work); Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001); Comstock, 91 F.3d at 1147 (claimant's prior work history characterized by fairly low earnings and significant

breaks in employment casted doubt on his credibility).  Indeed, as stated by the ALJ, Plaintiff's highest earnings were $6,324.96, in 2007, the year she allegedly became disabled, and she earned $5,336.29 in 1999 and $5,647.29 in 2006.  Significantly, Plaintiff had no earnings in 1994-1997, and only earned $1,839.22 in 1998.  (Tr. 356).

Eighth, the court notes that, on a form completed for the state, Plaintiff reported only that pain in her neck, lower back, and legs kept her from working.  (Tr. 386).  She did not allege disability due to a mental condition or vertigo.  The Eighth Circuit holds that it is significant that a claimant has failed to alleged disability due to a particular condition.  See Wall v. Astrue, 561 F.3d 1048, 1062 (8th Cir. 2009) (because claimant did not allege that she suffered from a severe mental impairment, the "ALJ's failure to discuss listing 12.05C [was], therefore unsurprising"); Dunahoo, 241 F.3d at 1039 (fact that the claimant did not allege depression on his benefits application was significant even though evidence of depression was later developed).

Ninth, the ALJ considered the ALJ considered that Plaintiff last had physical therapy in 2005; she had not undergone injections; she had not been admitted to a pain clinic; and she had failed to demonstrate that she was refused medical treatment due to an inability to pay.  (Tr. 17).  As stated above, a lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility.  See Roberts, 222 F.3d at 469; Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (despite plaintiff's argument that he was unable to afford prescription pain medication, ALJ may discredit complaints of disabling pain where there is no evidence that claimant sought treatment available to indigents).

In conclusion, the court finds that the ALJ's credibility determination is based on substantial evidence, and that it is consistent with the Regulations and case law.

**B.     Directions from Appeals Council and Plaintiff's RFC:**

Upon remanding after the ALJ's first decision, the Appeals Council noted that the decision was unclear regarding the severity of Plaintiff's vertigo, and directed the ALJ to further evaluate the severity of Plaintiff's vertigo. (Tr. 123). "The severity Regulation adopts a standard for determining the threshold level of severity: the impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'" Bowen v. Yuckert, 482 U.S. 137, 153 n.11 (1987) (quoting 20 CFR § 404.1520(c)). A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to perform basic work activities without regard to age, education, or work experience. See 20 C.F.R. §§ 404.1520(c), 404.1521(a). However, "[a]n impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007); see also 20 C.F.R. § 404.1521(a) (describing basic work activities). In other words, if the impairment has only a minimal effect on the claimant's ability to work, then it is not severe. See Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007). A plaintiff has the burden of establishing a severe impairment. See Kirby, 500 F.3d at 707.

On remand, consistent with the Appeals Council's directive, the ALJ considered the medical evidence and Plaintiff's testimony regarding her vertigo. Specifically, he considered Plaintiff did not seek emergency room treatment for this condition; no doctor reported witnessing Plaintiff's symptoms; Plaintiff's made conflicting statements regarding the severity of her vertigo; and Anne E. Winkler, M.D., who testified at the hearing as a medical expert, testified that, although Plaintiff complained of dizziness, testing was normal. The ALJ also considered that VNG testing results were normal, and that no etiology for vertigo complaints was established. (Tr. 16). Only after considering these facts did the ALJ find that Plaintiff's vertigo

was a non-severe impairment. The court finds that the ALJ's decision, in this regard, is consistent with the directive of the Appeals Council and based on substantial evidence.

The Appeals Council also noted that the ALJ did not consider State agency medical opinions that Plaintiff had limited ability to reach. (Tr. 123). On remand, the ALJ incorporated a limitation in Plaintiff's ability to reach in her RFC, and found that she could never reach overhead or reach out greater than 90 degrees for more than 2 hours a day. The court finds that ALJ's decision, in this regard, is consistent with the directive of the Appeals Council and based on substantial evidence.

Plaintiff argues the ALJ incorrectly afforded "little, if any" weight to the opinion of Tamara Blum, a counselor, when determining her RFC. Ms. Blum did report that Plaintiff had adjustment disorder with depressed mood, and that she had poor or no ability to perform at a consistent pace or to be aware of normal hazards and take appropriate precautions. (Tr. 610-12).

First, Ms. Blum was not an acceptable medical source as defined by the Regulations. See Social Security Ruling (SSR) 06-03p ("[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 C.F.R. 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight."). "[M]edical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); see also 20 C.F.R. §§ 404.1513(a), 416.913(a) (excluding therapists and nurse practitioners from the list of acceptable medical sources); Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) ("A therapist is not an 'acceptable medical source' to establish 'a medically determinable impairment.'").

Second, Ms. Blum stated that she did not conduct any testing and that her assessment was based on Plaintiff's reporting of her symptoms and observation. (Tr. 612). See Kirby v. Astrue,

500 F.3d 705, 709 (8th Cir. 2007) (ALJ was entitled to give less weight to the opinion of doctor where doctor's opinion was based largely on plaintiff's subjective complaints rather than on objective medical evidence).

Third, the ALJ's RFC did limit Plaintiff's exposure to avoid hazards, as recommended by Ms. Blum. See Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (limitations imposed by ALJ, as reflected in claimant's RFC, demonstrated that ALJ gave some credit to the opinions of treating physicians); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions.").

Fourth, the mere fact that a claimant was diagnosed with a mental impairment does not mean the impairment was severe. See Buckner v. Astrue, 646 F.3d 549, 557 (8th Cir. 2011). The court finds that the ALJ gave proper weight to Ms. Blum's opinion and that his decision, in this regard, is based on substantial evidence and consistent with the Regulations and case law.

To the extent the ALJ did not find Plaintiff disabled on the basis that Sarah Gores, a nurse practitioner, approved a 90-day disabled license plate for Plaintiff, Ms. Gores is also not an acceptable medical source as defined by the Regulations. See SSR 06-03p. Moreover, an "ALJ is not bound by the disability rating of another agency when he is evaluating whether [a] claimant is disabled for purposes of social security benefits, 20 C.F.R. § 404.1504." Pelkey v. Barnhart, 433 F.3d 575, 579 (8th Cir. 2006).

On reaching his RFC determination, the ALJ considered the opinion of the non-examining State agency physician who reviewed Plaintiff's medical records and concluded that

Plaintiff could perform a light range of work. (Tr. 565-66). <u>See</u> 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence.); <u>Roberson v. Astrue</u>, 481 F.3d 1020, 1025 (8th Cir. 2007) (moderate limitations do not prevent an individual from functioning "satisfactorily"). Additionally, the ALJ considered the testimony of Anne E. Winkler, M.D., who testified at the hearing as a medical expert. After reviewing the record, Dr. Winkler opined that Plaintiff was limited to lifting 10 pounds frequently, occasionally lifting 20 pounds, and standing and walking 6 hours in an 8-hour workday; she could sit without limitation; she could never climb ropes, ladders, and scaffolds, and never crawl; and she would have difficulty reaching more than 90 degrees for more than 1-2 hours every 4 hours. Dr. Winkler also testified that Plaintiff's testimony regarding the extent of her limitations was more limited than the medical evidence, and opined that she had seen individuals with Plaintiff's conditions who had responded to measures such as epidural injections and physical therapy and been able to return to work. (Tr. 89-94).

The Appeals Council finally noted that the ALJ had not properly evaluated Plaintiff's ability to perform past relevant work and that she never performed substantial gainful activity while working as a hair stylist or dental receptionist. (Tr. 123). On remand, the ALJ found that Plaintiff had no past relevant work. (Tr. 17). Thus, the court finds that the ALJ complied with the directive of the Appeals Council, and that his decision, in this regard, is based on substantial evidence.

As stated above, on remand, the ALJ found Plaintiff had the RFC to perform light work except that she could only occasionally climb stairs and ramps, kneel, and crouch; she could never reach overhead and could not reach out greater than 90 degrees for more than 2 hours a

day; she must avoid concentrated exposure to extreme cold, wetness, and humidity; and she must avoid concentrated exposure to hazards of heights. The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support

the determination of the claimant's RFC."); Eichelberger, 390 F.3d at 591.  The court finds that the ALJ's RFC determination is based on substantial evidence.

On remand, the ALJ obtained the testimony of a VE pursuant to the directive of the Appeals Council.  (Tr. 124).  The VE testified that a person of Plaintiff's age and work experience, with the RFC which the ALJ assigned to Plaintiff could work as an information clerk, ticket taker, and order caller, and that such jobs existed in significant numbers nationally and in St. Louis.  The ALJ considered, as directed by the Appeals Council, that the VE's testimony was consistent with the information contained in the *Dictionary of Occupational Titles* (DOT).  Thus, the ALJ found Plaintiff not disabled.  Indeed, the VE's testimony provides substantial evidence to support the ALJ's ultimate determination that Plaintiff was not disabled.  See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("Based on our previous conclusion . . . that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (VE's testimony is substantial evidence when it is based on accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).

As for Plaintiff's argument that the ALJ failed to comply with the Appeals Council's directive regarding the testimony of a VE, the ALJ was not required to include limitations in a hypothetical posed to the VE beyond those which the ALJ found credible.  The court has found above that the ALJ's RFC assessment was based on substantial evidence; thus, the ALJ posed a proper hypothetical to the VE.  See Martise, 641 F.3d at 927 ("The ALJ's hypothetical question

to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (internal quotation omitted); <u>Guilliams v. Barnhart</u>, 393 F.3d 789, 804 (8th Cir. 2005) (proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by ALJ); <u>Gilbert v. Apfel</u>, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record); <u>Haggard v. Apfel</u>, 175 F.3d 591, 595 (8th Cir. 1999) (ALJ need not include additional complaints in the hypothetical not supported by substantial evidence). Thus, although the VE testified that a person with limitations beyond those which the ALJ found credible would not be able to work, the ALJ was not required to rely on the VE's response to this hypothetical. In conclusion, the court finds that the ALJ complied with the directives of the Appeals Council regarding the testimony of a VE and that the ALJ's decision, in that regard, is based on substantial evidence and consistent with the Regulations and case law.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,


**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 13.

**IT IS ORDERED** that a separate judgment be entered incorporating this Memorandum and Opinion.

Dated this 24th day of September, 2014.

       /s/ Noelle C. Collins_____
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE